IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> vs.  ) <br> ) <br> DANIEL SPITZER ) | Case No. 10 CR 651-1 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Daniel Spitzer was convicted of fraud-related offenses arising from his operation of what amounted to a Ponzi scheme. In January 2015, another judge of this Court who has since retired sentenced Mr. Spitzer to a prison term of twenty-five years. The judgment required Mr. Spitzer to pay close to $34 million in restitution to over 450 victims of his scheme. Mr. Spitzer later filed a motion under 28 U.S.C. § 2255, alleging ineffective assistance of counsel. The undersigned judge denied the motion in May 2018.

Mr. Spitzer filed a motion for reduction of his sentence in July 2020 under the so-called "compassionate release" statute, 18 U.S.C. § 3582(c)(1)(A). He sought transfer to home confinement or reduction of his prison sentence on the basis that his health condition put him at serious risk of harm due to the COVID-19 pandemic; he needed to be able to take care of his wife, who allegedly was also in poor health, and his son; and he had been significantly rehabilitated. Absent a reduction, Mr. Spitzer's anticipated release date, per the Bureau of Prisons website, is in April 2036, a bit more than eleven years from now.

After full briefing and submission of Mr. Spitzer's medical records—a process that was completed in or about June 2021—the Court denied Mr. Spitzer's motion. The Court concluded, based on controlling Seventh Circuit caselaw, that the availability of the COVID-19 vaccine meant that the risk of contracting the virus could not serve as an "extraordinary and compelling" reason permitting a reduction; controlling caselaw likewise precluded considering Mr. Spitzer's rehabilitation as an extraordinary reason under section 3582(c)(1)(A); and the record did not support a contention that his wife or his adult son required ongoing care that he was needed to provide. *See* dkt. 637 (Order of Dec. 9, 2021).

Mr. Spitzer has now filed a second motion for compassionate release. He cites his age and his health condition, as well as what he contends is substandard medical care available in prison. He contends that these factors, as well as the continued prevalence of new strains of the coronavirus and other viruses, put him at a significant risk of serious illness.

As indicated, Mr. Spitzer's motion is made under the "compassionate release" statute, 18 U.S.C. § 3582(c)(1). The statute provides that a court may reduce a sentence, after considering the factors in 18 U.S.C. § 3553(a), if it finds (among other things) that "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements issued by the [U.S.] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i) & (ii).[1]

Policy statements established by the Sentencing Commission, which took effect

---

[1] The parties agree that Mr. Spitzer has exhausted internal BOP procedures for seeking compassionate release, as required before a Court may consider a motion under the statute. *See* 18 U.S.C. § 3582(c)(1)(A).

on November 1, 2023, provide—as applicable here—that a defendant's medical circumstances constitute an extraordinary and compelling reason if the defendant has:

- "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process," that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or
- a medical condition "that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

U.S.S.G. § 1B1.13(b)(1)(B), (C). Another policy statement provides that extraordinary or compelling reasons exist if "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5).

The Court has carefully reviewed the parties' submissions as well as Mr. Spitzer's medical records, which have been submitted by the government and cover the period from 2022 through February 2024. The Court finds that the record does not support a contention that Mr. Spitzer suffers from any "serious medical condition[s]" or that he is experiencing "deteriorating physical . . . health" as the Sentencing Commission's policy statements use those terms. Rather, the records document that Mr. Spitzer has medical conditions that are more or less unremarkable and consistent with those of an average American of his age.

Mr. Spitzer is now just short of sixty-six years old. The medical records reflect

that he is six feet tall and weighs about 205 pounds (the records reflect various weights from a low of 190 to a high of 213). If one uses 205 pounds, his body mass index (is 27.8. That qualifies him as being overweight, but not obese. Mr. Spitzer has been diagnosed with high blood pressure and allergies, but the records reflect that he is on medications for these conditions. He has had hip and knee pain but has been given steroid injections that, he reported to medical personnel, have worked. He had a lipoma on the back of his neck, but that is a benign condition, and in any event the lipoma was surgically removed. And Mr. Spitzer is currently incarcerated at FMC Rochester, which is a BOP medical facility near the Mayo Clinic—physicians from which have been among those who have treated Mr. Spitzer. Like any somewhat overweight senior citizen, Mr. Spitzer certainly faces medical challenges, but the records do not suggest anything that qualifies under the previously referenced Sentencing Commission policy statements.

    A different Sentencing Commission policy statement provides that "extraordinary and compelling reasons" authorizing a sentence reduction under section 3582(c)(1)(A) exist when:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D). Mr. Spitzer cites various disease outbreaks at BOP

institutions, including a norovirus outbreak at FMC Rochester. But aside from the fact that there is no evidence of a *current* outbreak or emergency at the institution, Mr. Spitzer's medical records do not support a contention that he is at an increased risk of "severe medical complications or death."

Mr. Spitzer also cites significant evidence of his rehabilitation and good works while imprisoned. But as the Court ruled on his previous motion, in this Circuit a defendant's rehabilitation—even extraordinary rehabilitation—is insufficient to qualify as an extraordinary and compelling reason allowing a sentence reduction under section 3582(c)(1). *See, e.g., United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022).

Section 1B1.13 also allows consideration of a combination of factors cited in the policy statement. But in Mr. Spitzer's case, that does not carry the day in the Court's view.

Finally, Mr. Spitzer suggests that recent amendments to the Sentencing Guidelines concerning calculation of criminal history points benefit him and warrant a reduced sentence. Certain aspects of Amendment 821 to the Guidelines, which made a number of adjustments related to how criminal history points are determined, apply retroactively. But the only change that Mr. Spitzer identifies—a provision that decreases the offense level for certain defendants who had zero criminal history points—does not apply to him. Under U.S.S.G. § 4C1.1(a)(6), this offense level decrease applies only if, among other things, "the defendant did not personally cause substantial financial hardship." Mr. Spitzer cannot satisfy that requirement; his conduct caused losses of nearly $34 million to more than 250 investors. A number of them reported that they faced financial ruin as a result of their losses, could not retire, or had to return to work at

5

an advanced age. Mr. Spitzer's submissions do not advance any argument that he meets this requirement, likely because there is no viable argument along those lines.

One circumstance noted by Mr. Spitzer, unrelated to his health, did give the Court some pause. Mr. Spitzer noted in his reply brief, filed in late May 2024, that it appeared from the BOP website that his codefendant, Alfred Gerebizza, had been released to community confinement—a halfway house—on an unknown date. The sentencing judge had imposed a twenty-year prison sentence upon Mr. Gerebizza, five years less than Mr. Spitzer's sentence. At that point, the basis for his release to community confinement in 2024 (or whenever) was not apparent. There was also a second, more recent development: the Clerk received in December 2024 a document indicating that the President has commuted the rest of Mr. Gerebizza's sentence of confinement, resulting in his release from the halfway house. This left a far greater disparity in the actual sentences served than the five-year gap between the prison terms the sentencing judge imposed.[2]

To get to the bottom of this, the Court directed the government to make inquiry to determine the basis on which Mr. Gerebizza had been released to community confinement, and when. The government did so and filed an update on January 10, 2025 stating that Mr. Gerebizza was released by BOP to community confinement in September 2021 because BOP found that he "met the CDC criteria as high risk for severe COVID infection due to his age and an underlying medical condition." Gov't's Updated Resp. (dkt. 676) at 2. The government also noted that at that point, Mr.

---

[2] The actual disparity is not as great as it might appear, however. It appears that Mr. Gerebizza was detained pending trial, starting in 2011, whereas Mr. Spitzer was free on bond until he was sentenced in 2015.

6

Gerebizza had completed fifty-seven percent of his prison sentence. That is a good deal more than Mr. Spitzer so far: he has served a little less than nine years of the twenty-five imposed and has a little more than eleven years more to serve before his anticipated release date.

Mr. Gerebizza's early release does not provide a basis to grant Mr. Spitzer's motion for a sentence reduction. A disparity in sentences is a factor in determining an appropriate sentence under 18 U.S.C. §§ 3553(a)(2)(A) (imposition of a "just sentence") and 3553(a)(6) (avoiding "unwarranted disparities"). But when a court considers a motion to reduce under section 3582(c)(1)(A), the section 3553 factors come into play only *after* the court determines that the defendant has established an "extraordinary and compelling reason[ ]" warranting a sentence reduction. In this case, Mr. Spitzer has not cleared that threshold, as the Court has discussed. The fact that Mr. Gerebizza did establish an extraordinary and compelling reason, at least in the eyes of BOP, does not impact the consideration of Mr. Spitzer's section 3582(c)(1)(A) motion.

## Conclusion

For the reasons stated above, the Court denies defendant Daniel Spitzer's motion for compassionate release [dkt. no. 649]. The Clerk is directed to mail a copy of this order to: Daniel Spitzer; No. 42173-424; FMC Rochester; P.O. Box 4000; Rochester, MN 55903.

Date: January 13, 2025

_____
MATTHEW F. KENNELLY
United States District Judge

7